*In re* MARRIAGE OF ROBERT M. MAGNUSON, Petitioner-Appellee and Cross-Appellant, and PATRICIA A. MAGNUSON, Respondent-Appellant and Cross-Appellee.

Second District   No. 2—86—0283

Opinion filed June 12, 1987.

Paul J. Bargiel, of Chicago, and William E. Jegen, of Glen Ellyn, for appellant.

Robert R. Verchota, of Donovan & Roberts, of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This appeal proceeds from Patricia A. Magnuson's (Patricia) petition for modification of judgment of dissolution of marriage. The trial court granted her petition by awarding her an increase in maintenance from $750 to $1,200 per month. A subsequent order granted her amended petition for attorney fees by requiring Robert M. Magnuson (Robert) to contribute $8,500 toward her fees and costs. Both parties have appealed these two orders. Patricia argues that

the trial court abused its discretion in failing to award her maintenance in excess of $1,200 and in failing to require Robert to pay all of her attorney fees and costs. Robert contends that the trial court erred in granting Patricia any increase in maintenance and in requiring him to pay any of Patricia's attorney fees and costs. We affirm the maintenance award and reverse the attorney fee award.

Robert and Patricia were married on December 30, 1960. Two children were born to the parties as a result of the marriage. After 17 years of marriage, Robert filed for dissolution of marriage. A supplemental judgment order was issued on December 5, 1979. Custody of one minor child was awarded to Robert. Custody of the other minor child was awarded to Patricia. The court ordered Robert to pay Patricia child support in the sum of $800 per month and rehabilitative maintenance of $450 per month for 48 months. The order also set forth a distribution of property.

On January 31, 1980, an agreed order was entered temporarily awarding Robert the custody of both minor children. This order also released Robert from paying the $800 monthly child support.

The trial court issued its order on February 6, 1980, granting the parties a dissolution of marriage *nunc pro tunc* December 5, 1979.

On March 31, 1980, the trial court granted Patricia's post-trial motion, vacating its supplemental judgment order dated December 5, 1979. The court granted the parties a new trial. This order, however, was vacated on April 29, 1980, by an order reinstating the original supplemental judgment.

On May 20, 1980, Patricia petitioned the court for an order modifying the maintenance award. The motion noted Patricia's intent to file a notice of appeal.

On May 23, 1980, Patricia appealed the supplemental judgment order dated December 5, 1979, and the order vacating the April 29, 1980, order. On August 26, 1981, this court, in an order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23), affirmed the supplemental judgment order of the trial court with one exception. (*In re Marriage of Magnuson* (1981), 98 Ill. App. 3d 1203.) Our court ruled that the trial court abused its discretion in limiting Patricia's maintenance award to a period of 48 months. We reasoned that "[i]n view of the total circumstances of this case including the age of the wife, her long absence from the labor market, the condition of her physical and emotional health, the standard of living of the parties, and the husband's ability to pay maintenance, the 48-month limitation on the maintenance award to the wife is speculative." 98 Ill. App. 3d 1203 (unpublished Rule 23 order) (slip op. at 3-4).

On July 7, 1980, the trial court found that there had been a substantial change in circumstances justifying an increase in maintenance and ordered Robert to pay Patricia maintenance in the sum of $750 per month, retroactive to February 1, 1980.

On March 26, 1984, Patricia filed her second petition for modification, which forms one of the two bases of this appeal. This petition alleges that substantial and material changes of circumstance with respect to each of the parties have occurred since the entry of the July 7, 1980, order. Patricia alleges that in spite of her many efforts, she has been unable to secure employment. She relates that in 1981 she undertook a course of studies in the field of nursing, but that at the end of 2½ years she was disqualified from further participation therein by reason of her physical impairments, *i.e.*, eye difficulties. She also alleges that she is without funds sufficient for her proper maintenance, sustenance, and livelihood. She further alleges that Robert is gainfully employed and possesses property and assets of substantial worth. The petition seeks a modification of the original award and an order requiring Robert to pay Patricia's attorney fees incurred by her in connection with her institution and prosecution of the present proceedings. Extensive discovery was taken by both parties.

On January 7, 1985, her attorney, Barth H. Goldberg, withdrew as counsel for Patricia. Sometime thereafter, Patricia was represented by William E. Jegen (Jegen). In a letter agreement dated January 23, 1985, Jegen outlined the fee arrangements:

"6. *The law firm agrees that the amount of $10,000.00 will be the maximum charge,* exclusive of costs advanced, for services rendered in preparation for and the conduct of a hearing on the pending petition to modify, subject to the hearing not exceeding three (3) days. Additional hearing days will be charged at the hourly rate, not to exceed $1,000.00 per day. This amount does not include services after the decision by the trial court on the Petition.

7. The client acknowledges that the maximum fee established herein takes into consideration the financial position of the client, and that should additional time be required, then the law firm may seek further compensation through a petition for attorneys fees to be paid by Robert Magnuson. This paragraph shall not limit the allegation in the pending Petition which seek *[sic]* reimbursement for all fees and costs." (Emphasis added.)

On July 15, 1985, Robert and Patricia stipulated to the following

facts: Robert is currently employed as president of the Elmhurst Memorial Hospital at a current salary of $130,000 per year, $3,000 of which is paid as a clothing allowance directly to suppliers; he has deferred compensation credit in the amount of $30,260; he has business and personal use of a hospital-provided automobile; the hospital also provides health and medical reimbursement insurance for Robert, group life insurance in the amount of $279,000, supplemental term life insurance in the amount of $85,000, participation in the Elmhurst Memorial Hospital pension plan, reimbursement for financial planning, estate planning, and income tax preparation costs of up to $3,500 per year, and the right to receive one meal per day in the hospital cafeteria at an annual cost of $260; he is a director of the Elmhurst Federal Savings & Loan and receives director's fees of $775 per month for those months during which he attends; as of December 1, 1984, his present value in his accrued pension plan fund was approximately $142,700; his account balance as of March 31, 1985, of the credits to the July 1, 1975, deferred compensation plan was $27,804.81 (upon receipt by Robert of this amount, one-half is payable to Patricia pursuant to the divorce decree); his account balances as of January 1, 1985, of the credits to the July 1, 1980, deferred compensation plan totalled $48,278; the balance of his July 1, 1981, deferred compensation plan as of March 31, 1985, was $73,345.31; he has the opportunity to designate up to $24,000 per year of his income to be paid into a tax deferred annuity plan; during 1984, $24,852 was paid into this fund; the account balances as of January 9, 1985, of the fund total $146,765; between 1980 and 1982, Robert deposited $10,325 into a deferred compensation plan established between him and the Elmhurst Federal Savings & Loan Association (the current balance of that fund is $15,786.27); as of June 13, 1980, Robert was employed as executive director of the Elmhurst Memorial Hospital with an annual salary of $69,000; as of June 13, 1980, he was a director of the Elmhurst Federal Savings & Loan and received director's fees in the amount of $550 per month; and his salary changed from 1981 to 1984 as follows: $104,567.65 (1981), $114,259.61 (1982), $131,459.15 (1983), $126,801.40 (1984).

Patricia's assets include a managed fund at Chicago Title & Trust Company. As of September 30, 1980, the account was $68,715; as of June 18, 1985, the balance was $177,786. She also has funds on deposit in money market, NOW and checking accounts. She has an interest in a limited partnership known as Prospect Courts which is liquidated and generates income. Patricia's after tax income is as follows:

| 1984 | $38,924 |
| 1983 | $49,443 |
| 1982 | $23,937 |
| 1981 | $24,229 |

On August 20, 1985, Patricia filed her petition requesting the trial court to order Robert to pay all court costs, attorney fees, and other expenses incurred by Patricia in prosecuting the petition for modification. The petition was based on Patricia's claim that Robert had substantially increased his income and assets. Patricia claims that Robert has net assets in excess of $800,000 and a net income in excess of $200,000 per year. The petition states that Patricia requires preservation of her assets, which are less than one-fourth of Robert's assets. A substantial reduction of those assets would substantially decrease Patricia's earnings and jeopardize her future security. The petition notes that Patricia initially employed Goldberg for the purpose of prosecuting her section 2—1401 petition and her petition to modify. The petition declares that Patricia paid Goldberg $10,150, and in addition to the amount paid, Goldberg filed a petition for an award of additional attorney fees in the amount of $15,300 to be paid by Patricia. The petition states that Patricia also paid $11,750.45 to Jegen for attorney fees and costs incurred subsequent to Goldberg's withdrawal. There is an outstanding balance for further attorney services through July 31, 1985, in the amount of $12,426.40. Additionally, Patricia has directly paid expert witnesses in the amount of $1,650. She has also expended $540 in court costs. The petition requests that Robert pay: $36,517.45; any amount found to be due Goldberg on his petition for fees; and the additional fees of Jegen for services rendered after July 31, 1985.

On August 22, 1985, Goldberg filed a motion requesting the right to file a petition for attorney fees which was withdrawn after protracted litigation.

On November 6, 1985, the trial court issued its order relative to the petition for modification. The order states, in part:

"3. That based upon the income tax return of the parties, the parties [sic] spendable income for the year 1975 was $42,000; for 1976, $48,000; for 1977, $51,000; for 1978, $57,000; and for 1979, $62,000. Spendable income is income from all sources, not deferred compensation after taxes that were in fact paid pursuant to the tax return.

4. That the average standard of living of the family for the five-year period was $52,000 of spendable income, as determined from the tax returns.

5. That assuming to the benefit of [Patricia] that she consumed 40 percent of the spendable income which assumption would be overly generous then the standard of living relative to her maintenance at the time of the entry of the Judgment for Dissolution would have been $21,000."

The order states that, based upon the substantial increase in the consumer price index, Patricia would be entitled to $28,000 per year to maintain the standard of living she enjoyed during the marriage. It further relates that she has an obligation and responsibility to contribute to her own support and that, although she has the ability to do so, she has failed to become employed. The order notes that Patricia has income available as a result of her property distribution, without reducing her capital. Finally, the order states that Patricia makes no contribution toward the support or educational needs of the children and that Robert has an ability to pay the amount necessary to meet Patricia's maintenance needs. The court ordered that the maintenance award be modified to a monthly sum of $1,200 per month for permanent maintenance, such modification being retroactive to the date of the filing of the petition in March 1984. The issue of attorney fees was reserved. In a separate order, the court denied Robert's motions to strike and dismiss Goldberg's and Patricia's petitions for fees.

On January 8, 1986, the trial court issued an agreed order which in part granted Jegen leave to file an amended petition which deleted portions referring to Goldberg.

On January 15, 1986, Patricia filed an amended petition for fees which, in part, relates that she has already paid $11,750.45 to Jegen and she still had a balance due owing to Jegen of $14,542.50.

On February 27, 1986, the trial court issued its order concerning the petition for attorney fees by Patricia and Jegen. The trial court ordered that judgment be entered in favor of Jegen and against Robert for $8,500. On March 31, 1986, Patricia timely appealed from the judgment order entered on February 27, 1986, the letter opinion of February 21, 1986, and the order entered on November 6, 1985. Patricia seeks our court to reverse the trial court's findings and require Robert to pay all of the attorney fees and to increase Patricia's maintenance award. Robert filed his notice of cross-appeal that same day. He seeks our court to reverse the trial court's order providing for Patricia's $1,200 monthly maintenance award and remand to the trial court to enter an order denying the petition for modification or, alternatively, to vacate the order and enter an order reducing the award and/or reverse the retroactive effect of said order. It also

seeks to reverse the judgment awarding attorney fees.

Patricia first contends that the award of $1,200 per month was an abuse of discretion. She argues that in light of the evidence showing her poor physical condition, the trial court incorrectly determined that she has the ability to become employed, has failed to seek such employment, and that she owes a greater obligation to herself and to the former family unit to become employed than that which she has evidenced in the past. Patricia contends that due to her limited assets and inability to find employment the maintenance award of $1,200 per month is insufficient to maintain the standard of living that she enjoyed while married.

In response, Robert contends that the award of $1,200 per month for maintenance is in excess of the amount required to meet the $28,000-per-year standard of living. In support of this argument, Robert relies on Patricia's income for the years 1981 through 1984, and the trial court's ruling that Patricia has the ability to become employed. Robert contends that the amount that Patricia could reasonably expect to earn is between $17,000 and $18,000. Robert argues that the trial court failed to take into account her ability to become employed when determining the maintenance award.

■ The rule in Illinois is that "[m]aintenance awards rest within the sound discretion of the trial court and will not be disturbed on review unless the award amounts to an abuse of discretion or is against the manifest weight of evidence." *In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 41; see also *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287; *In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478, 482.

■ Section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)) requires that the amount of maintenance be sufficient to provide the spouse seeking maintenance with the standard of living established during the marriage. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1087.) However, where the spouse seeking maintenance can in part provide for herself, the amount of the maintenance award shall be determined by subtracting from the standard of living that amount which the spouse can contribute to her own support. 89 Ill. App. 3d 1078, 1087.

■ Having concluded that the standard of living for Patricia was $28,000 per year, and in light of evidence that showed Patricia's assets to be in the amount of $180,000 and the income that those assets were producing, it cannot be said that award of $1,200 per month was against the manifest weight of the evidence in that such

amount was too low.

■ Similarly, in addressing Robert's contention that the award was too high, it does not appear that the court's decision was against the manifest weight of the evidence. The trial court found that Patricia was employable. Although Robert contends that this determination required the trial court to find that Patricia would have an income of $17,000 to $18,000 per year, such a finding was not necessitated. Given Patricia's testimony as to her health, the trial court could have concluded that she was only capable of obtaining some type of modest employment. At the same time, Patricia's testimony as to her health cannot be said to have precluded a finding that she could not find some type of employment. During her testimony, the trial court had the opportunity to determine for itself the abilities of Patricia. Because the trial court judge is in the best position to determine the abilities of an individual to become employed (see *In re Marriage of Ingrassia* (1986), 140 Ill. App. 3d 826, 835), it cannot be said that the trial court's decision that Patricia was employable was against the manifest weight of the evidence.

■ ■ Robert argues that based on Patricia's income for the years 1981 through 1984 he should not have to pay maintenance. The figures that Robert uses are from Patricia's Illinois income tax returns, which show a higher income than her Federal tax returns. However, in determining the couple's standard of living, it appears that the trial court used the couple's Federal income tax returns. Thus, in determining Patricia's income, it can be assumed that the trial court used Patricia's Federal income tax returns. Clearly, this was not incorrect. Furthermore, the Federal tax returns disclose that each year $9,000 of Patricia's income was from maintenance payments by Robert, and in several years her income included capital gains. Certainly, Patricia's gross income cannot be used to argue that she has sufficient income to support herself without maintenance when maintenance itself has been a part of the amount that has made up her gross income for the years 1981 through 1984. And, while a continued pattern of long-term capital gains should not be discarded when determining a spouse's ability to support herself, the trial court in the present case could have concluded that such income should not have been considered because it was too speculative. Finally, because the standard of living that the trial court set appears to have been based on after tax dollars, it may have properly determined the amount of maintenance required to have an after tax income of $28,000. Thus, based on evidence produced as to Patricia's assets, the income producing ability of those assets, and Patricia's

physical limitations as they regard her ability to become employed, it cannot be concluded that the maintenance award of $1,200 per month was against the manifest weight of the evidence in that it was too high.

Robert argues that the order requiring him to pay $8,500 in attorney fees to Jegen must be reversed because: (1) the court improperly considered fees and costs which were not incurred by Patricia; (2) the finding of $21,000 as reasonable is against the manifest weight of the evidence; (3) Patricia failed to establish her inability to pay her own fees and costs incurred; and (4) it would be inequitable for Robert to be required to pay any of Patricia's fees and costs in light of Patricia's ability and failure to contribute to her own support.

Robert argues that the term "necessarily incurred by the other spouse" found in section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 508) precludes requiring him to pay any attorney fees to Jegen because Patricia had limited her own liability to Jegen to $10,000. Robert argues that Patricia thus could not have "incurred" expenses in excess of $10,000.

Jegen responds that the phrase "attorneys fees necessarily incurred by the other spouse" is not synonymous with "attorneys fees the other spouse is obligated to pay." Thus, he argues that the amount that Robert may be required to pay is not limited by the agreement reached between Jegen and Patricia.

■ Attorney fees may be awarded to a litigant only when they are expressly authorized by statute or by agreement of the parties, and a trial court is bound by the statutory grant. (*In re Mac Harg* (1983), 120 Ill. App. 3d 753, 754.) Thus, it must be determined whether the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)) authorizes attorney fees in the present case. This determination, in turn, relies on the meaning of the term "incurred" found within section 508(a) (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)).

Jegen contends that the case of *In re Marriage of Brockett* (1984), 130 Ill. App. 3d 499, stands for the proposition that the words "necessarily incurred" are not synonymous with "obligated to pay." In *Brockett* the petitioner had contacted a legal assistance organization that furnished an attorney for her because she had no money. (130 Ill. App. 3d 499, 500.) There was no written agreement between the petitioner and either the attorney or the organization. (130 Ill. App. 3d 499, 500.) The attorney sought fees, and the trial

court denied the request because the petitioner had not "incurred" such fees. The trial court found " 'that pursuant to Section 508 of the Illinois Marriage and Dissolution of Marriage Act an award of attorney's fees cannot be made where the requesting party does not "incur" attorney's fees or where the requesting party cannot be ordered to pay a portion of all of her own attorney's fees such as in the instant case.' " *In re Marriage of Brockett* (1984), 130 Ill. App. 3d 499, 500.

On appeal the Appellate Court for the Fifth District reversed. The court held:

> "In the case at bar, although petitioner may have no obligation to pay her attorney, the court may not deny or limit the award of attorney fees. Section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508) does not expressly limit a fee awarded to a legal services office. We do not believe the word 'incurred' as used in the statute is meant to exclude those represented by legal service agencies." 130 Ill. App. 3d 499, 501.

The Appellate Court for the Fifth District cited two cases: *Fairley v. Patterson* (5th Cir. 1974), 493 F.2d 598, and *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719. However, a close examination of both *Fairley* and *Merchandise National Bank* leads to the conclusion that neither supports the decision reached in *Brockett.*

*Fairley* was not interpreting the term "incurred." The language from *Fairley* which was cited in *Brockett* refers to whether, when an attorney's fee is authorized, a reduction in such fee is appropriate when the recipient is a legal assistance organization. (493 F.2d 598, 607.) Furthermore, *Fairley* involved the grant of attorney fees under the equitable powers of the court, not under a statutory grant. Nowhere did the *Fairley* court attempt to define the word "incurred."

Likewise, *Merchandise National Bank* was not interpreting the term "incurred." Rather, *Merchandise National Bank* was interpreting the term "reasonable attorney's fees" as used in the Truth in Lending Act (15 U.S.C. sec. 1640(a) (3) (1970)). (*Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 724.) In fact, the word "incurred" is found nowhere within that section of the Truth in Lending Act that deals with attorney fees. (15 U.S.C. sec. 1640(a) (3) (1970).) Consequently, in interpreting the term "necessarily incurred" as used in section 508(a) of the Illinois Marriage and Dissolution of Marriage Act this court must begin anew.

■ It is a basic premise of statutory construction that the lan-

guage of a statute should be given its plain and ordinary meaning. (*Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 396.) Thus, the question becomes, what is the plain and ordinary meaning of the word "incurred." Webster's Third New International Dictionary 1146 (1971) defines "incur" as "become liable or subject to." Applying this meaning leads to the conclusion that the term "necessarily incurred" found in section 508(a) requires a spouse to be personally liable for such fees before the other spouse can be required to pay them. In the present case, Patricia's liability is limited by the contract entered into between herself and Jegen. Therefore, an award for attorney fees cannot be based on any amount which exceeds the amount for which Patricia herself could be held liable under the contract.

■ Because the Illinois Marriage and Dissolution of Marriage Act does not authorize an award of attorney fees other than what the spouse claiming entitlement to such fees is obligated to pay to her attorney, there is no need to consider Robert's other contentions.

The decision of the trial court granting Patricia maintenance of $1,200 per month is affirmed. The decision of the trial court awarding Jegen attorney fees of $8,500 is reversed.

Affirmed in part and reversed in part.

DUNN and NASH, JJ., concur.