In re the **MARRIAGE OF Jean Wolfson SWINK, Petitioner,**

and

**Steven D. Swink, Respondent–Appellee,**

**and Concerning Gilbert M. Sackheim, Intervenor–Appellant.**

**No. 89CA0830.**

Colorado Court of Appeals, Div. V.

Feb. 14, 1991.

Stephen Selig, Nederland, for respondent-appellee.

Claudia J. Bayliff, Longmont, Terrill, Pizzi & Ridgway, Martha L. Ridgway, Stone, Sheehy, Rosen & Byrne, Andrew Rosen, Boulder, for intervenor-appellant.

Arnold & Porter, James J. Sandman, Richard P. Barkley, Denver, for amicus curiae Colo. Lawyers Committee and Boulder County Legal Services.

Kelly, Haglund, Garnsey & Kahn, James W. Hubbell, Terre Lee Rushton, Denver, for amicus curiae Colo. Women's Bar Ass'n.

Opinion by Judge HUME.

The sole issue presented by this appeal is whether, pursuant to § 14–10–119, C.R.S. (1987 Repl.Vol. 6B), a trial court may award a fee to an attorney who, on a *pro bono* basis, has rendered services to a party to a dissolution of marriage proceeding. The trial court concluded that the statute does not authorize such relief and entered an order denying the wife's request that her attorney be awarded a reasonable fee for legal services rendered in her behalf. We reverse that order and remand the cause with directions that the court reconsider the request.

The facts underlying this appeal are undisputed. Jean Wolfson Swink (wife) contacted the Boulder County Legal Services (BCLS) office seeking legal representation in a proceeding to dissolve her marriage to Steven D. Swink (husband). She was referred to a local attorney, Gilbert M. Sackheim, who is a member of the BCLS referral panel and who agreed to represent her on a *pro bono* basis in such proceedings. With her petition for dissolution, the wife filed motions for temporary custody of the parties' two children, for child support, and for attorney's fees.

Husband, who was initially not represented by counsel, stipulated to the entry of orders granting temporary custody and child support to the wife pending a hearing on final orders that was set for April 22, 1987. Negotiations for a marital separation agreement resolving all issues were then pursued. However, five days before the scheduled final orders hearing, the husband retained counsel who entered an appearance in the proceeding and indicated that permanent custody of the children would be contested. On April 22, 1987, the parties appeared with their respective counsel, presented evidence, and offered a separation agreement that disposed of all issues except permanent custody, visitation, and child support.

The court entered a decree of dissolution of marriage, approved and adopted the separation agreement, and scheduled the remaining issues concerning custody, visitation, and support for a later hearing. Subsequently, prior to the next scheduled hearing date, wife renewed her request for an award of attorney's fees that she anticipated would be occasioned by litigating the reserved issues. At the conclusion of the custody hearing, wife's counsel submitted an affidavit documenting the expenditure of 20.3 hours of his time in preparing for and participating in that hearing, plus an additional sum of $160.50 for subpoena service costs, witness fees, and mileage costs related thereto.

After further hearing, the trial court found that the requested sum of $2,901 reasonably represented the value of services rendered to and costs incurred on behalf of the wife. It also determined that, based upon a consideration of the relative gross incomes of the respective parties as reflected by their child support guideline worksheets, an appropriate award, if allowable, would be $2,175.

However, since the wife had obtained representation at no cost to herself, the court expressed reservations about whether an award of attorney's fees was "necessary" to place the parties on an equal footing in the dissolution proceedings. Therefore, it took the issue under advisement pending submission of *amicus curiae* briefs from the Boulder County Bar Association and BCLS.

Upon receipt of those briefs, the court denied the wife's request for attorney's fees, concluding that the award was not "necessary" under the terms of § 14–10–119 as that statute had been interpreted by persuasive case authority. Thereafter, wife's counsel was granted leave of the trial court to intervene as an interested party to pursue this appeal.

The intervenor contends that the trial court erred in its interpretation of the applicable statute. We agree.

Section 14–10–119 was enacted in 1971 as a part of the General Assembly's adoption of the Uniform Dissolution of Marriage Act (Act). *See* Colo.Sess.Laws 1971, ch. 130 at 520 et seq. It is nearly identical to the Uniform Marriage and Divorce Act § 313 after which it was patterned. *See* 9A Uniform Laws Annot., Matrimony, Family &

Health Laws 450 (1987). The Colorado statute provides:

"The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under [the Act] and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name."

The issue presented requires that we determine whether the language of the statute limits a court's authority to award attorney's fees to situations in which fees are actually paid or obligations are actually incurred by that attorney's client, or whether it also permits awards to be made to an attorney who has provided *pro bono* representation to an impecunious client in a proceeding under the Act.

 If statutory language is plain and its meaning is clear and unambiguous, there is no need to resort to extrinsic rules in aid of statutory construction. *Griffin v. S.W. Devanney & Co.*, 775 P.2d 555 (Colo. 1989). But if such language is rationally susceptible of different meanings, a court must attempt to ascertain the General Assembly's intention in enacting the statute so as to carry out its intended purpose. *See* §§ 2–4–203 and 2–4–212, C.R.S. (1980 Repl.Vol. 1B).

Although the title of § 14–10–119 refers only to attorney's fees, the language of the body of the statute also deals with other costs and expenses "of maintaining or defending" a dissolution proceeding. *See McMillion v. McMillion*, 31 Colo.App. 33, 497 P.2d 331 (1972) (suit money allowable in dissolution proceedings under former statute includes necessary travel expenses to appear and defend).

We conclude that the language used in § 14–10–119 is susceptible of alternative and distinct meanings depending upon whether the General Assembly intended the limiting phrase "for the cost to the other party" to apply to necessary incidental costs and expenses incurred in a dissolution proceeding, or whether it also intended that language to apply as a condition to an award of attorney's fees. The language used in the next statutory clause suggests, but does not expressly state, that awards may be made for "legal services rendered" while limiting awards of costs to those for which an obligation has been incurred. Thus, we conclude that we must look beyond the words of the statute in order to ascertain its intended meaning.

The Act provides that it shall be "liberally construed and applied to promote its underlying purposes" which are, among other things, to promote the amicable settlement of marital disputes and to mitigate the potential harm to spouses and their children caused by the legal process of dissolution of marriage. *See* § 14–10–102, C.R.S. (1987 Repl.Vol. 6B). It further commands that it be applied and construed to effectuate its general purpose to make uniform the law concerning divorce and dissolution proceedings among those states which adopt the Uniform Marriage and Divorce Act. *See* § 14–10–104, C.R.S. (1987 Repl.Vol. 6B).

The underlying purposes of promoting amicable settlement and mitigating potential harm to dissolution litigants and their children indicate that the General Assembly intended that courts consider not only matters having a direct financial impact upon the parties, but of broader concepts of fairness that will have far-reaching effects upon the parties and their children. The promotion of access to courts and the provision for adequate legal representation for those who need it are important cornerstones to the concept of fundamental fairness under the law. Moreover, a number of courts have recognized that ready and available access to legal representation will aid in the amicable settlement of dissolution and custody disputes, discourage unfair settlements prompted by unequal bargaining power of the litigants, and afford a necessary benefit to the litigants, their children, and to society. *See Benavides v. Benavides*, 11 Conn.App. 150, 526 A.2d 536

(App.1987); *In re Marriage of Gaddis,* 632 S.W.2d 326 (Mo.App.1982); *Ferrigno v. Ferrigno,* 115 N.J.Super. 283, 279 A.2d 141 (1971).

■ While individual attorneys have a professional responsibility to provide service to the economically disadvantaged on a *pro bono* basis, and while contingent fee arrangements, in the usual sense, are generally discouraged in domestic relations cases, it is generally recognized that the efforts of individual lawyers are often insufficient to meet the public need. Thus, every lawyer also has a duty to support proper efforts and appropriate programs to meet the needs of persons unable to pay reasonable fees. *See Code of Professional Responsibility* Canon 2, DR 2–103(D), EC 2–16, EC 2–20, EC 2–24, and EC 2–25.

Some courts also have recognized that allowance of reasonable fees to attorneys who provide *pro bono* services to the economically disadvantaged tends, as a matter of economic reality, to encourage greater lawyer-participation in such activities and that such practice should be encouraged as a matter of public policy. *See Hale v. Hale,* 772 S.W.2d 628 (Ky.1989).

■ The trial court indicated that it was constrained by the Uniform Marriage and Divorce Act § 313 (Official Committee Comment) which recommends that the court should determine an attorney fee order to be "necessary" after considering the parties' financial resources. In so doing, the court followed the reasoning of the Montana Supreme Court in interpreting a similar statute. *See Thompson v. Thompson,* 630 P.2d 243 (Mont.1981). In *Thompson,* the court also relied in part upon language used in *In re Marriage of Franks,* 189 Colo. 499, 542 P.2d 845 (1975), to the effect that the Colorado statute is "intended to equalize the status of parties to dissolution proceedings." The trial court thus reasoned that, because an award was not "necessary to equalize the parties' financial status" in this case, the request must be disallowed.

While we agree that the court is required to consider the financial status of both parties and that equalization of financial

status is an important factor to be considered, we also conclude that the statute is intended to promote the availability of legal services to needy litigants in appropriate cases. In so concluding, we are persuaded by the reasoning of other courts that have interpreted statutes patterned after the Uniform Marriage and Divorce Act. *See Hale v. Hale, supra; In re Marriage of Gaddis, supra. See also Butler v. Butler,* 376 So.2d 287 (Fla.Dist.Ct.App.1979); *Benavides v. Benavides, supra; Ferrigno v. Ferrigno, supra; Olson v. Olson,* 438 N.W.2d 544 (S.D.1989). *But see In re Marriage of Magnuson,* 156 Ill.App.3d 691, 109 Ill.Dec. 569, 510 N.E.2d 437 (App.1987) (interpreting a statute allowing recovery of attorney's fees necessarily incurred or expected to be incurred).

Hence, we hold that § 14–10–119 is sufficiently broad to allow the court to enter an order requiring a party to pay a reasonable sum for legal services rendered to the other party by a *pro bono* attorney in dissolution of marriage proceedings.

Because no award of attorney's fees was entered by the trial court here, no issue is properly presented as to the amount allowable. We note, however, that the trial court expressly made findings to support an amount that it would have allowed if permitted to do so. Because the issue may arise on remand, we address the criteria to be considered in determining an appropriate award of attorney's fees.

■ In considering the financial resources of the parties, the trial court focused on the history of gross earnings as reflected in their child support worksheets. While a history of gross earnings may be reflective of the parties' respective abilities to earn money, and while we would agree that such information should be considered in fashioning an award, we are also of the opinion that gross earnings history, in and of itself, may not accurately reflect the total financial resources of the parties.

In considering total financial resources relevant to an award of attorney's fees, the court should also consider the other obligations of the respective parties for child

support, marital indebtedness, and the ability of the party against whom the award is requested to comply with the terms of the order. *See In re Marriage of McKendry*, 735 P.2d 908 (Colo.App.1986).

The order denying an award of attorney's fees is reversed, and the cause is remanded for reconsideration of the issues of the entry of such an award and the amount thereof in conformity with the views expressed herein.

NEY and PLANK, JJ., concur.