2021 IL App (2d) 200648-U
No. 2-20-0648
Order filed December 17, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF JOANN O'HARA, | ) ) | Appeal from the Circuit Court of Kane County. |
| Petitioner-Appellant, | ) ) ) | |
| and | ) ) | No. 16-D-667 |
| DAVID O'HARA, | ) ) ) | Honorable René Cruz, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in granting summary judgment for respondent. Therefore, we affirm.

¶ 2   Petitioner, Joann O'Hara, and respondent, David O'Hara, were married on August 27, 1977, and their marriage was dissolved on December 19, 2017. Petitioner currently appeals from the trial court's grant of summary judgment for respondent on the issue of whether he should be responsible for paying her attorney fees for her prior appeal. We affirm.

I. BACKGROUND

¶ 3        In September 2018, petitioner filed a petition for rule to show cause why respondent should not be held in contempt for failing to have a $300,000 death benefit coverage for maintenance, as required by their modified dissolution judgment. Following a hearing on November 1, 2018, the trial court found that respondent was not in contempt. It ruled that he was to maintain death benefits in the amount of $200,000, with that total declining monthly based on maintenance payments.

¶ 4        Petitioner appealed, arguing that the trial court erred in: modifying the level of death benefit coverage without a showing of a substantial change in circumstances; not conducting a meaningful formal hearing on her petition for contempt; treating her petition for contempt as a motion to modify; and denying her motion to reconsider. We held that the trial court erred in modifying the amount of death benefit coverage for maintenance, because respondent never filed a motion to modify. We further held that any error in not receiving a formal hearing on the petition for contempt was invited error because petitioner acquiesced in the manner the trial court conducted the hearing on the petition. We therefore affirmed in part, reversed in part, and remanded.

¶ 5        On March 2, 2020, petitioner filed a petition for attorney fees and costs, in which she sought fees and costs for the appeal. She filed an amended petition on August 13, 2020. Petitioner alleged that she had requested that her attorney, Benedict Schwarz, continue to represent her in the appeal of the November 1, 2018, order; she substantially prevailed in the appeal; and section 508(a)(3.1) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508(a)(3.1) (West 2020)) allowed for an award of attorney fees and costs. That section states:

        "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in

accordance with subsection (c-1) of Section 501 and in any other proceeding under this subsection. At the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection. Fees and costs may be awarded in any proceeding to counsel from a former client in accordance with subsection (c) of this Section. Awards may be made in connection with the following:

* * *

(3) The defense of an appeal of any order or judgment under this Act,

including the defense of appeals of post-judgment orders." *Id.*

Petitioner requested attorney fees and costs of $74,509.15 and attached time sheets detailing the work done.

¶ 6      Respondent filed a motion for summary judgment on June 29, 2020. Citing this court's decision in *In re Marriage of Magnuson*, 156 Ill. App. 3d 691, 701-02 (1987), he argued that a precondition to entitlement for attorney fees under section 508(a) was that the party have an actual underlying obligation to pay the fees in the first instance. Respondent asserted that petitioner made admissions in her deposition showing that she lacked such an obligation.

¶ 7      On August 6, 2020, petitioner filed a response to the summary judgment motion arguing that she and her attorney had a properly executed retainer agreement dated May 25, 2016, that remained in full force and effect. On August 13, 2020, Schwarz submitted an affidavit stating that he had continually represented petitioner from May 25, 2016, to the present date, and he attached a copy of the retainer agreement.

¶ 8      Respondent filed a response on August 27, 2020, asserting that the retainer agreement

specifically stated that it did not apply to appeals.

¶ 9     A hearing on the motion for summary judgment took place on September 29, 2020. The trial court issued its ruling on October 5, 2020, stating as follows. The fee agreement covering the pendency of petitioner's prior litigation stated: "Services required in any subsequent enforcement or modification proceedings, appellate proceedings or proceedings attacking the trial court's judgment shall be subject to a new and separate agreement." The last time the matter was in court was in February 2018, so it appeared that the paragraph would apply to anything that would have occurred subsequent to that time, and require a new agreement. Petitioner relied on the last paragraph of the agreement, which stated: "Notwithstanding, [*sic*] the above, representation will continue until judgment is entered or until I no longer represent you, at which time the remaining balance is due in full unless other arrangements are made." The trial court stated that because judgment had already been entered and there was nothing pending in the trial court, it seemed that under the agreement's terms, the representation had ended.

¶ 10     The trial court further stated that respondent pointed to language in the agreement stating that petitioner would be billed monthly, with payment expected within 10 days. Respondent also pointed to the following language in petitioner's deposition regarding the fees for the appeal:

> "Q: So I noticed in your credit charges that starting in January you've made—from January 1st [2020] till now you've made three payments to Mr. Schwarz's office; is that correct?
>
> A: I believe it has been three. I don't have the dates on it. But, yes, there have been three, yes.
>
> Q: And those were in payment of invoices that you've received from Mr. Schwarz's office?

A: Yes.

Q: And are those itemized statements?

A: Yes, they are.

Q: And are you current with his office presently?

A: No.

\* \* \*

Q: All of 2019 you didn't make any payments, correct?

A: Not that I can remember, no.

\* \* \*

Q: Did you ever receive any invoices from Mr. Schwarz's office while matters were pending on appeal?

A: I don't understand the question.

Q: Well, you obviously have made payments in \*\*\* January, March, and May [2020], and I think those payments totaled up over $5,000, and you say you—

A: Yes.

Q: —think you owe over $6,000. That's based on invoices you received from his office; is that correct?

A: Yes. I had—they were all sent to me via email with Angela from his office, yes.

Q: All right. So in the—you get those once a month?

A: I don't know when I got them. They were—they came out—probably not.

Q: It lists what work's been done, telephone conference with client—

A: Yes.

Q: —letter to Attorney Doyen, court appearance, correct?

A: Yes.

Q: So it basically itemized all the work done, correct?

A: Yes.

Q: And when did you begin receiving those invoices?

A: First off, I didn't get any mail, so the ones that were mailed I didn't see until I came home here two weeks ago. The ones that were done online, whatever dates those were sent out to me were the dates I saw them, but I don't have my email open to tell you when the dates were.

Q: Well, you weren't—when did you go to Florida?

A: January 20th.

Q: All right. Did you receive any invoices before you went to Florida?

A: I don't remember.

Q: Okay. You say you did not make any payment to Mr. Schwarz during 2019; is that correct?

A: Not that I can remember.

Q: Do you recall getting any invoices during 2019?

A: I do not.

Q: So do you know why it is you were not getting invoices during 2019?

A: The only thing I can remember about 2019 was the appeal to the appellate court for the contempt of court getting a life insurance policy, that would have been 2019.

Q: All right. Well, did you get invoices detailing the work that was being done on the appeal?

A: You know, Mike, if I did they're in a pile somewhere here.

Q: Well, did you pay any of them?

A: No.

Q: Why is that?

A: Because we didn't resolve the problem yet?

Q: What do you mean 'didn't resolve the problem'?

A: Well, from what I understand, he appealed the amount of time and money he put in because [respondent] was in contempt of court getting his life insurance policy, and he took it to the appellate court and it took forever and ever for that to get to the appellate court, and that was just, I think, in the end of January.

Q: So what does that have to do with paying your fees?

A: Because I wasn't paying any fees until we figured out where we were at with all that.

Q: What do you mean figured that out?

A: Well—

Q: Was there an agreement with Mr. Schwarz for payment of fees on the appeal?

A: No, there wasn't an agreement. We just—I signed—at the time I signed the information and he was taking it to the appellate court and we were going to discuss it afterwards.

Q: So is there a signed agreement with regard to the fees incurred on the appeal?

A: I don't know.

Q: Well, you just said you signed something.

A: Prior to him—when he was doing the motions—I don't understand all the legal things. I signed paperwork that he was going to try to appeal the fact that Judge Cruz had

denied him having to get an insurance policy. Then I signed him to go into the appellate court. That's all I can recall.

Q: Have you paid any money to Mr. Schwarz for the fees or costs for the appeal?

A: For the appeals with regard to the life insurance policy?

Q: Correct.

A: No.

* * *

Q: So your testimony under oath is that Mr. Schwarz on your behalf undertook the professional responsibility for filing an appeal, prosecuting an appeal through to final resolution by the appellate court without any agreement between you and he as to how or when any attorney's fees would be paid?

A: That is correct."[1]

The trial court stated that based on the contract and deposition testimony, it believed that there was not a specific obligation or agreement, whether written or not, that existed between petitioner and her attorney for fees, so she could not shift the obligation of paying any portion of the fees to

---

[1] We have quoted the deposition testimony as set forth in the parties' pleadings, and not the trial court's recitation of the deposition testimony, which paraphrased some sections.

Although not quoted by the trial court at the hearing, petitioner further stated in her deposition that she did not receive regular invoices to know that the appellate fees were approaching $74,000. Further, when asked, "And when you made the decision to authorize him to pursue the appeal, what was your understanding of what your obligation was to pay him the fees?", petitioner replied, "I didn't have one."

respondent for the expenses incurred on appeal. This was not a situation that might present an exception to this rule, such as a *pro bono* case or one in which the fees were discharged. Accordingly, the trial court granted summary judgment for respondent.

¶ 11   On November 2, 2020, the trial court entered a finding pursuant to Illinois Supreme Court Rule 304(a) that there was no just reason for delaying the enforcement or appeal of the order. Petitioner timely appealed.

¶ 12                                                     II. ANALYSIS

¶ 13   On appeal, petitioner contests the grant of summary judgment for respondent. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). We review *de novo* a trial court's ruling on a motion for summary judgment. *Nichols v. Fahrenkamp*, 2019 IL 123990, ¶ 13.

¶ 14   Petitioner asserts that respondent took the position that she had no obligation to pay her attorney fees and therefore could not transfer the obligation to respondent. According to petitioner, respondent argued that she did not receive monthly billing statements, there was no fee agreement regarding the appeal, and there was no ongoing litigation in the case from February to September 2018. Petitioner argues that, to the contrary, there were genuine issues of material fact such that the trial court erred in granting summary judgment for respondent. Specifically, she points to her deposition testimony that she received invoices via e-mail and that the bills were itemized; answered "I don't remember" in response to whether she received invoices in 2019 during the appeal; and testified that the invoices could be in a pile somewhere. Petitioner also highlights her testimony that she "wasn't paying any fees until we figured out where we were at with all that,"

and she asserts that she never stated that she did not have an obligation to pay attorney fees. Petitioner maintains that her response of "I didn't have one" when asked about her understanding of her obligation to pay fees was not an assertion that she did not have an obligation to pay fees, given the retainer agreement and her previous testimony. She argues that her responses show that she was confused and did not understand many of the questions, and that she contradicted herself many times. Petitioner maintains that her deposition testimony was at best unclear and ambiguous.

¶ 15    On the subject of the retainer agreement, petitioner emphasizes that although it states that services required in appellate proceedings shall be subject to a new and separate agreement, it subsequently states that "*[n]otwithstanding, the above*, representation will continue until judgment is entered or until I no longer represent you, at which time the remaining balance is due in full unless other arrangements are made." (Emphasis added.) Petitioner argues that Schwarz's representation of her per the agreement was therefore ongoing. She additionally argues that nothing prohibited her and her attorney from waiting to see if the trial court would award attorney fees for the appeal before requiring her to pay the remaining balance. She contends that the proper time to contest the validity of the retainer agreement would have been at a hearing on her petition for fees, as opposed to on a motion for summary judgment.

¶ 16    Regarding whether there was ongoing litigation between February and September 2018, she argues that no exhibits were provided to the court to support respondent's contention that there was no such litigation. Petitioner asserts that, to the contrary, Schwarz's representation of her never ceased. She highlights that the record shows that the trial court entered an order on February 9, 2018, regarding life insurance and other issues. She argues that there was also activity outside of court, as shown by a letter dated August 6, 2018, from Schwarz to respondent's attorney, which was attached as an exhibit to her September 6, 2018, petition for indirect civil contempt. Petitioner

maintains that in 2019, Schwarz continued to represent her with regard to her first appeal, and then in response to respondent's November 2019 petition to modify or terminate maintenance. She argues that it is important to note that the aforementioned petition was served on Schwarz, as respondent's attorney knew that Schwarz was still representing her. Petitioner contends that the record itself raises genuine issues of material fact regarding if and when her attorney-client relationship with Schwarz ever ended.

¶ 17    Petitioner argues that the trial court erroneously failed to construe the pleadings, depositions, admissions, and affidavits liberally in her favor, and further tried issues of fact instead of determining that issues of fact existed.

¶ 18    Respondent argues that the "material fact determined by the trial court was that Petitioner had no underlying obligation to pay the attorney's fees and costs" and that the "matter of law decided by the Trial Court is that because [p]etitioner had no obligation to pay the fees and costs[,] there is no legal basis for shifting these fees and costs to [r]espondent." He further contends that petitioner never submitted any counter-affidavits or other documents to contradict her deposition testimony or otherwise establish that she had an obligation to pay attorney fees and costs, nor did her attorneys ask clarifying questions during the deposition. Respondent points out that without supporting evidence, the suggestion that an issue of material fact exists is insufficient to create one. See *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 575 (2000). He argues that petitioner's own pleadings support the trial court's conclusion that there was no genuine issue of material fact, as in her initial pleading she alleged that she engaged her attorney to represent her on appeal, but later amended the pleading to recharacterize it as a continuation of the original representation from the retainer agreement.

¶ 19    Respondent additionally argues that petitioner's deposition testimony established that neither she nor her attorneys were operating under the terms of the original retainer agreement. He highlights, as did the trial court, that the agreement states that appellate proceedings are subject to a new and separate agreement. He also notes that the agreement states that billing statements were to be sent monthly, with balances due within 10 days. Respondent maintains that petitioner's deposition testimony makes clear that she did not receive monthly invoices while the matter was pending on appeal; did not make any payments for services rendered on appeal; and began receiving monthly invoices and making timely payments only once post-decree matters resumed in the trial court.

¶ 20    Respondent argues that although petitioner never openly states so, it is clear that she and her attorneys undertook the prior appeal with the understanding that she would not have an obligation to pay fees and costs, and that if they were successful on appeal, they would seek payment from respondent. Respondent argues that, under these circumstances, fee shifting cannot occur under *Magnuson*.

¶ 21    In her response, petitioner highlights that respondent states that the trial court "determined" a "material fact," which is improper because the trial court may not determine material facts at the summary judgment stage. See *Voral v. Voral*, 38 Ill. App. 2d 328, 331 (1962). She asserts that although the trial court itself did not say that it was determining a material fact, it did so by ruling on the most contested material fact, being the validity of the retainer agreement. Petitioner further argues that she signed pleadings that stated that she had an obligation to pay her fees, and she provided the court with a detailed transaction sheet showing the hourly work and fees incurred in the 2019 appeal.

¶ 22    We note that *Magnuson* held that the phrase " 'necessarily incurred by the other spouse,' " which was contained in the version of section 508 in effect at the time of *Magnuson*, meant that the statute "require[d] a spouse to be personally liable for such fees before the other spouse can be required to pay them."[2] Petitioner has not argued that *Magnuson's* holding is incorrect or does not apply to the current version of the statute, so we do not address that issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are forfeited); see also *Khoury v. Niew*, 2021 IL App (2d) 200388, ¶ 31 (we may affirm a grant of summary judgment on any basis in the record but may not reverse a grant of summary judgment on any grounds found in the record); *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33 (a reviewing court is not a repository into which an appellant may dump the burden of argument and research, nor is it our obligation to act as an advocate, and the failure to clearly define issues and support them with authority results in forfeiture of the argument). Significantly, we should not *sua sponte* consider issues unless there is an obvious error and we would not need to speculate what the parties' arguments would be (*People v. Givens*, 237 Ill. 2d 311, 329-30 (2010)), which is not the situation here. We will therefore apply *Magnuson* to this case.

¶ 23    Turning to the retainer agreement, we must determine whether it is ambiguous or unambiguous, which is a question of law that we review *de novo*. *Bozek v. Erie Insurance Group*, 2015 IL App (2d) 150155, ¶ 20 (we review *de novo* contract interpretation issues, including whether a contract is ambiguous). We interpret a contract to give effect to the parties' intent.

---

[2] We acknowledge that in *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 42, we stated in *dicta* that *Magnuson* was not applicable because "section 508(a) has been amended and the 'necessarily incurred' language relied upon by the court in *Magnuson* was deleted."

*Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989, ¶ 15. A contract is ambiguous if its language is susceptible to more than one reasonable interpretation. *Id.*

¶ 24    The retainer agreement states that "[s]ervices required in any subsequent enforcement or modification proceedings, appellate proceedings or proceedings attacking the trial court's judgment shall be subject to a new and separate agreement." Under this provision, it is clear that Schwarz's appellate work for petitioner would not be covered. Petitioner relies on a subsequent provision at the end of the contract stating, "Notwithstanding, the above, representation will continue until judgment is entered or until I no longer represent you, at which time the remaining balance is due in full unless other arrangements are made." However, " '[c]ourts and legal scholars have long recognized that, where both a general and a specific provision in a contract address the same subject, the more specific clause controls.' " *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 51 (quoting *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 411 (1992)). The first provision clearly and directly states that appellate proceedings shall be subject to a new and separate agreement, whereas the second provision does not specifically identify appellate proceedings at all. We recognize that we must construe a contract in a manner that none of its terms are rendered meaningless or superfluous. *Salce v. Saracco*, 409 Ill. App. 3d 977, 982 (2011). Giving effect to the first provision does not render the second provision superfluous, as the second provision is focused on recouping attorney fees due from the client for work that has already been completed.

¶ 25    Schwarz's behavior was consistent with our interpretation of the contract, as the deposition shows that petitioner did not receive monthly invoices for work on the 2019 appeal, which the retainer agreement specifies, and correspondingly was not required to pay for the invoices within 10 days. As respondent points out, when Schwarz began doing work for petitioner in the trial court

again, as opposed to the appellate work, he resumed sending out invoices, and petitioner had paid him over $5,000. Therefore, the retainer agreement does not create a genuine issue of material fact that would prevent summary judgment for respondent.

¶ 26    Looking more generally at petitioner's deposition testimony, we similarly conclude that it does not create a genuine issue of material fact that would defeat summary judgment. Petitioner testified that she did not remember getting any invoices or making any payments to Schwarz during 2019, when the appeal was pending, and that she had not paid any fees for the appeal up to the time of the deposition.  When asked, "So your testimony under oath is that Mr. Schwarz on your behalf undertook the professional responsibility for filing an appeal, prosecuting an appeal through to final resolution by the appellate court without any agreement between you and he as to how or when any attorney's fees would be paid?", petitioner replied, "That is correct." Additionally, when asked, "And when you made the decision to authorize him to pursue the appeal, what was your understanding of what your obligation was to pay him the fees?", petitioner replied, "I didn't have one." Based on petitioner's testimony, she did not have an obligation to pay any specific amount of attorney fees as a result of the appeal, such that there is no genuine issue of material fact that petitioner had not "incurred" nor was "personally liable" for the fees and costs of $74,509.15 that she sought to charge to respondent.

¶ 27    Petitioner argues that some of her responses showed that she was confused and that she gave contradictory answers, but the progression of the questioning shows that she was understanding and addressing the issue more directly as the questioning continued; the quoted portions above are subsequent to the sections of the deposition relied on by petitioner. "A party opposing a motion for summary judgment cannot rest on its pleadings if the other side has supplied uncontradicted facts that would warrant judgment in its favor [citation], and unsupported

conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact." *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20. We agree with respondent that the quoted deposition testimony supported his motion for summary judgment, and that petitioner did not adequately contradict this testimony within the deposition testimony provided or through other means, such as submitting invoices that were sent to her or copies of communications regarding the payment of appellate court fees. Accordingly, the trial court did not err in granting summary judgment for respondent.

¶ 28                                    III. CONCLUSION

¶ 29    For the reasons stated, we affirm the judgment of the Kane County circuit court.

¶ 30    Affirmed.