Annette L. Ware Vlahos appeals from a judgment modifying a Florida divorce judgment. We affirm in part, reverse in part, and remand.
The parties were divorced in Florida in September 1991. The divorce judgment granted physical custody of their two children to the mother and established liberal visitation for the father. The father was ordered to pay child support of $448.12 per month through the Orange County, Florida, circuit court. The judgment also specified that the father was to maintain health insurance coverage for the children, including dental coverage, "if available through his employment," and each party was to be responsible for 50% of any uninsured medical or dental expenses. The judgment further provided as follows:
 "In the event that the [father] can no longer, for any reason, provide medical and dental insurance for the children through his employment, the [father] shall be responsible for ninety percent (90%) of all medical and dental expenses, and the [mother] shall be responsible for the remaining ten percent (10%)."
The judgment also required the father to maintain a life insurance policy of not less than $300,000, with the minor children named as beneficiaries.
The Florida court modified the divorce judgment in November 1991 based upon a "modified parenting agreement" entered into by the parties after the mother decided to move to Alabama. The father's visitation schedule was modified to allow him to have the children visit with him for the majority of the summer. Holiday visitation for the parties was also modified. After child support was recalculated pursuant to Florida's child support guidelines, the father's share was computed to be $523.83 per month. Because the father was to have the children reside with him for all but two weeks during the summer, however, he was allowed a 20% reduction in his child support, for a total due each month of $419.06.
The record reflects that in 1993 the father became delinquent in paying his child support. An arrearage affidavit from the Orange County, Florida, circuit court indicates that on October 22, 1993, an order of that court established a child support arrearage of $5,804.20. The father's payment history from that court reflects that he paid that amount on December 15, 1993. The arrearage affidavit also indicates, however, that the father had "ongoing arrears" in the amount of $1,692.56 as of December 14, 1995.
On August 15, 1995, the mother petitioned the Jefferson County Circuit Court to modify the child support and visitation provisions of the divorce judgment. She also sought to have the father held in contempt for his failure to maintain $300,000 in life insurance and to require him to obtain the life insurance and to reimburse her for certain dental expenses paid on behalf of the children. At the request of the father, the court transferred the case to the Blount County Circuit Court. The mother and father presently reside in Jefferson County and Blount County, respectively. The father counterpetitioned, requesting the trial court to modify the visitation provisions of the divorce judgment and to eliminate the life insurance requirement. *Page 409 
The mother then amended her petition to allege that the father was in arrears in his payment of child support.
The trial court held a hearing, during which evidence was presented ore tenus. The mother testified that she had remarried and that after she remarried she voluntarily left her employment at a jewelry store to stay at home with her two children, who are now ages 10 and 8, and her two stepchildren, of whom her present husband has custody. At the time the mother left her employment, her salary was $1,235 per month. The father testified that he currently is employed as a mechanic with Thompson Tractor Company at a salary of $2,505 per month.
The mother introduced into evidence the arrearage affidavit from the Orange County, Florida, circuit court. She testified, however, that she sought only an arrearage of $538.12, representing child support due and unpaid in November and December 1993. In response, the father introduced into evidence a money order dated May 1993 for $1,676, which had been endorsed by the mother, and testified that it represented child support he had paid directly to the mother, not through the Florida court. He contended that he was current in his child support payments.
The father testified that he presently had life insurance in the amount of $300,000 for the benefit of his children. The record reflects, however, that the father did not apply for this policy until August 23, 1995, eight days after the mother had filed her petition. The father testified that he had had a $100,000 life insurance policy for the benefit of his children from February 1992 through August 1995, but acknowledged that the $100,000 policy did not satisfy the requirements of the divorce judgment. The August 1995 policy application contains a notation that upon the death of the father, the two Ware children are to "receive benefits at age 30, payable in increments of 15,000 plus interest, apiece, for 10 years."
The mother testified that she had incurred dental expenses for the children and that the father had not reimbursed her for his share of those expenses. The dental bill submitted by the mother reflects charges of $265. After payments made by the mother's insurance were credited, the bill reflected a balance due of $182.30. The mother requested that the father reimburse her for 90% of the balance due because he no longer carried dental insurance on the children. The father testified that dental insurance is not available through his present employer. He is able to provide medical insurance for the children through his employer.
The trial court modified the visitation schedule established by the Florida judgment. In addition to certain changes in holiday visitation, the father's visitation with the children for the entire summer was modified to allow him to have the children for two three-week periods during the summer vacation.
In computing the father's child support obligation, the court used the father's stated income of $2,505 per month and imputed income of $1,235 to the mother, reflecting her former salary. The record indicates that, based on those figures, the parties' combined income should be calculated at $3,740 per month, the basic child support obligation at $803, and the father's share at 67%. After giving the father credit for his health insurance costs of $92.08, his child support obligation was computed to be $507.43. Nevertheless, the trial court ordered the father to pay child support of $457.00 per month. The court stated as follows: "The monthly child support payment varies by 10% from guidelines which is a partial reflection of the Florida agreement of the parties to lower the support due to the extended summer visitation in the home of the [father] and his increased expenses as a result thereof."[1]
The court held the father in contempt for his failure, until August 23, 1995, to provide the life insurance policy as ordered by the *Page 410 
Florida judgment, and the court fined him $100 as punishment. The court did not, however, modify the requirement that the father maintain $300,000 in life insurance. The court also ordered the father to reimburse the mother $91.15 for dental expenses. Finally, the court held that the father was not in arrears in his child support payments.
The mother filed a post-judgment motion asking the trial court to modify its judgment. Regarding child support, the mother did not contest the trial court's imputing income to her, but argued that if the court based the imputed income on her former salary, it also should have considered the child-care costs she would have incurred if she were working. Furthermore, the mother argued that the trial court should not have considered the May 1993 payment made by the father in deciding whether he was in arrears in paying child support. She complained that the judgment did not determine whether the father's life insurance policy complied with the Florida judgment, arguing that the policy does not comply because it pays no benefits until each child is 30 years old. The mother also argued that the father should reimburse her for 90% of the dental expenses, not 50% as ordered by the trial court. The trial court denied the mother's post-judgment motion. The mother raises these four issues on appeal.
We first address the mother's contention that the trial court should have considered the cost of child care in determining the amount of income to be imputed to her. She argued in her postjudgment motion that the court should have considered "the $350.00 per month she was spending in child care costs in order to work and make the $1,235.00 gross income prior to her remarriage." Rule 32(B)(8), Ala. R. Jud. Admin., states that "[c]hild care costs, incurred on behalf of the children because of employment or job search of either parent, shall be added" to the basic child support obligation after subtracting the value of the federal tax credit for those costs. If the mother had been working, the trial court would have been obligated to include child care costs in its calculation of child support. See McDavid v. McDavid, 627 So.2d 446 (Ala.Civ.App. 1993). Because the trial court based the income imputed to the mother on her former salary, it also should have considered the effect on her salary that child care costs would have had. We do not agree with the mother that she is entitled to have her imputed income reduced by the amount she says she was spending for child care, but we do conclude that child care expenses should have been a factor in the trial court's child support calculations contemplated by the guidelines.
We now turn to the mother's contention that the trial court erred in finding that the father was not in arrears in his child support payments. Specifically, the mother argues that the trial court should not have considered the May 1993 payment of $1,676 because it was made before the Florida court established the arrearage in October 1993. A trial court's determination of the amount of a child support arrearage, including the grant or refusal of a credit, is largely a discretionary matter, and the trial court's ruling in that regard will not be reversed on appeal absent an abuse of discretion. McCreless v. McCreless, 673 So.2d 438
(Ala.Civ.App. 1995). Court-ordered child support obligations become final money judgments on the dates on which they accrue, and they are thereafter immune from modification. Id. Nevertheless, in determining an arrearage, a trial court may allow a credit to the obligated parent upon proof that monetary support was actually provided. State ex rel. McDaniel v. Miller,659 So.2d 640 (Ala.Civ.App. 1995). Normally, an obligated parent would be expected to present evidence of support payments when an arrearage is determined. In this case, however, the father testified that he was never notified that he needed to come to court regarding his past-due child support. He apparently was placed in jail in December 1993 for nonpayment of child support, and he testified that the amount of the bond he was required to pay in order to be released from jail was equal to the arrearage established by the court in October 1993. The father offered proof that he had paid directly to the wife an amount that corresponds to the amount the Florida court lists as "ongoing arrears." Not only did he present a copy of the money order endorsed by *Page 411 
the wife, but he also presented a copy of the certified mail return receipt he used to send the money order. Under these circumstances, we cannot say that the trial court abused its discretion in finding that no arrearage existed. See alsoState Dep't of Human Resources ex rel. Pollard v. Pollard,646 So.2d 111 (Ala.Civ.App. 1994).
We next consider the mother's argument that the life insurance policy obtained by the father in August 1995 does not comply with the requirement of Florida judgment that he maintain $300,000 in life insurance with the minor children named as beneficiaries. The father has procured a policy of insurance on his life, but, after reviewing the policy, we think it clear that what he has obtained is actually an annuity that will provide certain benefits to his children in their adulthood in the event of his death. The policy makes no provision whatever for the children during their minority. InPittman v. Pittman, 419 So.2d 1376 (Ala. 1982), our supreme court considered whether a father's creation of a trust for the use and benefit of his children, funded by the proceeds from a life insurance policy, constituted substantial compliance with a provision in a divorce judgment requiring him to provide life insurance naming his children as irrevocable beneficiaries. In determining whether the father had substantially complied with the judgment, the court stated:
 "The patent purpose for requiring Pittman to make each of his daughters irrevocable beneficiaries of life insurance policies was to ensure that in the event he suffered an untimely death, as he in fact did, the children would, in any event, be protected to the fullest extent possible with the proceeds of the insurance policies."
419 So.2d at 1379. The policy obtained by the father in this case provides no protection for his children during their minority in the event he suffers an untimely death and, as a result, is unable to provide for their support. The trial court erred in allowing the father to satisfy the life insurance requirement of the Florida judgment, a requirement that the trial court did not modify, with the policy of record in this case.
Finally, the mother argues that the trial court should have ordered the father to reimburse her for 90% of the dental expenses she incurred on behalf of the children. We agree. The Florida judgment clearly requires the father to pay 90% of all medical and dental expenses if "for any reason" he cannot provide medical and dental insurance for the children. He testified that he does not have dental coverage; therefore, he is responsible for 90% of the children's dental expenses. The trial court erred in ordering him to reimburse the mother for only 50% of the dental expenses submitted.
We reverse those aspects of the judgment regarding child support, life insurance, and reimbursement of dental expenses, and we remand the cause for further proceedings consistent with this opinion. In all other respects, we affirm the judgment.
The father's request for an attorney fee pursuant to Rule 38, Ala. R.App. P., is denied.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in part and dissents in part.
[1] We note that in Flanagan v. Flanagan, 656 So.2d 1228, 1232
(Ala.Civ.App. 1995), this court held that Alabama's child support guidelines "do not authorize abatement of child support during periods of visitation that are not 'substantially in excess of those customarily approved or ordered by the court.' Rule 32(A)(1)(a)." Because the mother did not appeal the trial court's 10% reduction in child support based upon the father's summer visitation, however, we do not consider that issue. Exparte Riley, 464 So.2d 92 (Ala. 1985).