Timmi Deeann Hennis ("the mother") brought an action for divorce against her husband Darrell Willis Hennis ("the father"), alleging an irretrievable breakdown of the marriage and seeking, among other things, custody of the couples' minor daughter ("the child"). The trial court granted a divorce to the parties, and the father has timely appealed from that judgment. We affirm in part, reverse in part, and remand for further proceedings.
The mother and father were married in 1996. On March 5, 2002, the child was born to the couple. Following the mother's initiation of the divorce action, the trial court heard testimony from the parties and then entered a pendente lite order in April 2004.[1] That order awarded the parties joint temporary custody of the child and required, among other things, the parties to arrange for the father to have custody of the child 6½ days out of every 14 days.
At the time of the trial, the father was 37 years old. He was employed by the Mobile Fire Department as a "swing driver" emergency medical technician. The father's work schedule required him to work for 24 hours continuously, then he would be off duty for 48 hours continuously. Typically, the father would start work at 7:00 in the morning and then work until 7:00 a.m. the next day. As a result of that schedule, he would have some weekends off of work and would work other weekends. According to the father's testimony, when the child was staying with him pursuant to the pendente lite order, the father's mother would take care of the child when the father was working. The father testified that, according to his calculations, he would be off of work for 129 days during the 180 days that the child would be in school. Therefore, the father stated, he would be better able to provide for the child than the mother in terms of time spent with the child.
The father testified that his monthly income was $2,568.65, but he admitted that that amount did not include overtime pay. According to the father's testimony, his expenses exceed his income by $609 per month. The father also testified that he could not afford to pay child support to the mother were she to be awarded custody of the child. However, when asked how he makes up for the difference in his expenses and his income, the father testified that he worked overtime every chance he had. The father admitted that he did not include his overtime pay in his CS-41 child-support income affidavit. Additionally, when asked whether his list of expenses included any "padded" expenses, the father stated "I hadn't padded much. . . ." Although it was not clear how much over-time the father might expect to work in the future, the testimony at trial indicated that overtime work might be available to him in the future; nothing in his testimony indicated that it would certainly not be available.
The father also testified that he paid for health insurance for both himself and the child. That insurance coverage included dental insurance as well as extra coverage for cancer.
The mother, who was 35 years old at the time of the trial, testified that, since the parties separated in May 2003, she had been living with her parents in Gulf Shores. The mother also testified that she was employed full-time at Thomas Hospital in Fairhope as a cancer registrar. *Page 524 
Concerning her work hours, the mother testified that she worked from 7:30 a.m. to 4:00 p.m. on weekdays and that she was off of work on the weekends. Occasionally she worked overtime.
The mother stated that she could obtain insurance for both herself and the child and that, although she was not sure about the scope of the father's insurance coverage, she knew that the child would be able to see any doctor under her coverage plan — even if that meant paying a larger copay when necessary. According to the mother, the cost to cover the child under her plan would be $37 more than the amount she was then paying to cover herself. The mother also testified that a disadvantage of continuing to use the father's insurance policy would be that under that policy she would have to drive the child to Mobile for medical visits, whereas under her insurance policy she would be able to take the child to Thomas Hospital in Fair-hope where she was employed.
In regard to the child's potential day-care service in the event she were to have custody of the child, the mother testified that enrolling the child in a day care operated by the United Methodist Church would cost $100 per week. Other day-care centers the mother had investigated would cost the same amount or more. The parties anticipated that the child would start public school when she could enroll in five-year-old kindergarten. The mother also testified that because of the pendente lite custody order the child was only with her for one week out of every two. Therefore, the mother testified, she had not enrolled the child in a day care because she would have had to pay to keep the child's spot in the day care even when the child was not attending. Instead of being enrolled in day care, the child had been staying with the maternal grandparents when the mother attended work.
The mother testified that she had been abused by the father and that she left him because of that abuse. Although the mother stated that the majority of the abuse was verbal and emotional, she added that he had also physically abused her one time when he picked her up and threw her down on a bed. According to the mother, the father indicated at that time that he wanted to hit her with his belt. The mother further testified that on another occasion the father threw a bar stool at her when she was trying to leave their house to attend church. The father denied that he had ever hit the mother or that he threw a bar stool at her, but he admitted that he had thrown her over his shoulder on one occasion. On another occasion, according to the mother, the father pushed Rebecca Blakemore, the child's maternal grandmother ("the maternal grandmother"), in a Wal-Mart discount department store parking lot during an exchange of the child pursuant to the trial court's pendente lite custody order. The mother and the maternal grandmother testified that it was only after the father had pushed the maternal grandmother that the maternal grandmother hit the father with the child's "sippy cup." The father disputed that version of the incident, but he acknowledged that a confrontation had occurred. The mother also testified that she felt that were the father to lose his temper with the child, as he had with her, the child would be in danger.
Concerning the state of her health, the mother testified that she has diabetes and that she uses an insulin pump that injects insulin into her body 24 hours a day. Although the father opined that the mother's diabetes could prevent her from properly taking care of the child, the mother testified that her diabetes would not pose such a problem. *Page 525 
The father stated that he had attended counseling with Wanda Taylor, a licensed professional counselor, because he had been very distraught about losing his wife. Taylor was called by the father to testify, apparently as an expert witness.[2] When Taylor took the stand the mother objected to her testimony on the basis that she had requested Taylor's records regarding counseling sessions with the father but those records were never provided to the mother. In response to a subpoena for those documents issued by the trial court during the course of discovery, Taylor wrote to the trial court stating that those records were confidential and that under § 34-8A-21, Ala. Code 1975, she could not provide them at that time. When the trial court sustained the mother's objection to Taylor's testimony, the father's attorney stated that he took exception to that ruling; however, he did not state what he expected Taylor's testimony to show.
Three other witnesses for the father testified, including the father's minister, the father's mother, and a friend of the father. Their testimony was to the effect that the father loved the child and that the child's best interests would be served by placing her in his custody. However, each of the witnesses had a limited knowledge of the father's interaction with the mother during the course of their marriage.
Following the conclusion of the trial, the trial court entered a judgment that divided the parties' marital property, awarded joint legal custody of the child to the parties, and awarded physical custody of the child to the mother. The trial court's judgment also ordered the father to pay $604 in monthly child support, as well as 50% of the child's noncovered medical expenses. In addition, the judgment required the mother to provide insurance coverage for the child. The father moved the trial court to alter, amend, or vacate the judgment or, in the alternative, to grant the father a new trial. The trial court heard oral arguments concerning the father's motion, but it ultimately denied that motion. The father then timely appealed from the trial court's judgment.
As this court recently stated concerning the applicable standard of review:
 "When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App. 1995). `Th[is] presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.' Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App. 1999). The trial court's ability to observe witnesses is particularly important in child-custody cases. Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001) (quoting Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981))(`"In child custody cases especially, the perception of an attentive trial judge is of great importance."'). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App. 2000)."
Mullis v. Mullis, [Ms. 2051068, June 22, 2007] ___ So.2d ___, ___ (Ala.Civ.App. 2007). *Page 526 
However, the ore tenus standard of review does not apply to a trial court's conclusions as to legal issues.R.K. v. R.J., 843 So.2d 774, 776 (Ala.Civ.App. 2002). Issues of law are reviewed de novo. Barber v. Moore,897 So.2d 1150, 1153 (Ala.Civ.App. 2004).
The father first argues that the trial court erred when it excluded the testimony of Taylor. At trial the father sought to call Taylor to testify, apparently as an expert witness. During discovery, the trial court had issued a subpoena directing Taylor to produce any and all documents related to the father's counseling. Taylor wrote a letter in response to the trial court's order to produce documents, stating that she was required to keep her records confidential pursuant to § 34-8A-21, Ala. Code 1975. The father argues that Taylor simply invoked her statutory privilege and respected her duty of confidentiality to her client when refusing to turn over her records. Therefore, the father argues, the trial court should not have excluded the entirety of Taylor's testimony merely because of Taylor's adherence to her professional responsibility to keep confidential the father's records.
We review a trial court's decision to exclude evidence to determine whether the trial court exceeded its discretion.Davis v. Hanson Aggregates Southeast, Inc.,952 So.2d 330, 334 (Ala. 2006) (citing Bowers v. Wal-Mart Stores,Inc., 827 So.2d 63, 71 (Ala. 2001)).
 "`Generally, in order to preserve review of the trial court's ruling sustaining an objection to proffered evidence, the party offering the evidence must make an offer of proof indicating what the evidence would have shown. Cherry v. Hill, 283 Ala. 74, 214 So.2d 427 (1968). However, in situations in which the question disallowed indicates on its face the expected answer, no offer of proof is necessary to preserve error on appeal. Id."'
Kilcrease v. John Deere Indus. Equip. Co.,663 So.2d 900, 902 (Ala. 1995) (quoting Walton v. Walton,409 So.2d 858, 861 (Ala.Civ.App. 1982)). Thus, "[t]heWalton exception to the `offer of proof rule is applicable if, from the full context of the record, the trial court is fully aware of the nature of the testimony the witness is prepared to give if permitted to testify."Kilcrease, 663 So.2d at 902. "Where the relevancy of evidence is not self-evident, the proponent of it must make an offer of proof explaining its relevancy in order to preserve error." Systrends, Inc. v. Group 8760, LLC,959 So.2d 1052, 1064 (Ala. 2006) (citing Kilcrease, supra;Burkett v. American Gen. Fin., Inc., 607 So.2d 138
(Ala. 1992); and Harbert v. Harbert, 721 So.2d 224
(Ala.Civ.App. 1998)). Thus, "[w]here the evidence may be admissible for one purpose but inadmissible for another, the offeror must so specify in his offer in order to put the trial court in error." Systrends, 959 So.2d at 1065 (citingTown of Eclectic v. Mays, 547 So.2d 96 (Ala. 1989), andEnsor v. Wilson, 519 So.2d 1244 (Ala. 1987)); seealso Rule 103(a)(2), Ala. R. Evid.
In this case, when the trial judge excluded Taylor's testimony the father's attorney merely stated that he took exception to that ruling. The father never made an offer of proof explaining the relevancy of Taylor's testimony. Furthermore, we cannot say that the trial court was "fully aware" of the nature of the testimony Taylor was prepared to give, or that the relevancy of her testimony was "self-evident." Although the father's attorney stated what Taylor's testimony would have shown during his oral argument in support of the father's postjudgment motion, the father's failure to make an offer of proof of Taylor's expected testimony at the time of the trial failed to preserve the issue for appellate *Page 527 
review.[3] See Davis v. Davis, 474 So.2d 654,656 (Ala. 1985) (holding that an appellant's offer of proof made in a motion for a new trial was insufficient to preserve any alleged error because a party must make an offer of proof at the moment an objection is sustained by the trial court). Thus we affirm the judgment of the trial court as to this issue.
The second issue the father raises is whether the trial court erred in granting the mother physical custody of the child. In reviewing the trial court's custody determination we apply the following principles:
 "In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent. Hall v. Hall, 571 So.2d 1176 (Ala.Civ.App. 1990). The trial court's overriding consideration is the children's best interests and welfare. Santmier v. Santmier, 494 So.2d 95 (Ala.Civ.App. 1986). The factors that enter into the court's custody determination include the child's age and sex and each parent's ability to provide for the child's educational, material, moral, and social needs. Tims v. Tims, 519 So.2d 558
(Ala.Civ.App. 1987). Likewise, it is proper for the court to consider the `characteristics of those seeking custody, including age, character, stability, mental and physical health . . . [and] the interpersonal relationship between each child and each parent.' Ex parte Devine, 398 So.2d 686, 696-97 (Ala. 1981)."
Graham v. Graham, 640 So.2d 963, 964
(Ala.Civ.App. 1994).
The father argues that the trial court erred in awarding custody of the child to the mother because, he says, the mother's diabetes may impair her ability to care for the child and because the father would have more days off from work to take care of the child than the mother. Although the father argues that it is difficult to see what "tipped the scale" in the mother's favor, there is substantial evidence to support the trial court's judgment. For example, the mother testified concerning her parents' efforts to help her raise the child and concerning her efforts to enroll the child in a day care to allow interaction with other children. The mother also testified that her diabetes was under control, that she had stable employment, and that her parents would help her take care of the child when necessary. The trial court could have determined that the child's best interests would be served by placing her in the mother's custody. Therefore, we affirm the judgment of the trial court insofar as it placed the custody of the child with the mother.
The third issue the father presents is whether the trial court erred in its calculation of the child support the father must pay the mother. Specifically, the father asserts three grounds for reversal on this issue: (1) the trial court erroneously included day-care expenses in its child-support calculation; (2) the trial court erred in ordering the mother to pay for the child's medical and dental insurance and in ordering the father to pay one-half of noncovered medical expenses; and (3) the trial court erred in failing to deviate from the Rule 32, Ala. R. Jud. Admin., child-support guidelines because strictly applying those rules would result in an undue hardship upon the father. The calculation of a parent's child-support obligation is governed, at least in part, by the application of Rule *Page 528 
32, Ala. R. Jud. Admin. This court has stated:
 "A court determines a noncustodial parent's child-support obligation by applying Rule 32, which establishes `Child Support Guidelines'; the application of the those guidelines is mandatory. Nelson v. Landis, 709 So.2d 1299
(Ala.Civ.App. 1998). The trial court has no discretion in the matter. Mitchell v. Mitchell, 723 So.2d 1267 (Ala.Civ.App. 1998). Furthermore, our supreme court has recognized that those guidelines require the trial court to consider all the resources of both parents and not simply their incomes. Mitchell, supra (citing Ex parte St. Clair County Dep't of Human Res., 612 So.2d 482
(Ala. 1993)). Rule 32(E), Ala. R. Jud. Admin., provides that `[a] standardized Child Support Guidelines form and a Child Support Obligation Income Statement/Affidavit . . . shall be filed in each action to establish or modify child support obligations and shall be of record and shall be deemed to be incorporated by reference in the court's child support order.' The trial court may, within its discretion, deviate from the Child Support Guidelines; however, if it does so, it must enter a written finding, supported by the evidence, that the application of the guidelines would be unjust or inequitable. Rule 32(A)(i) and (ii); Allegro v. State ex rel. Lett, 747 So.2d 913, 914
(Ala.Civ.App. 1999); Nelson v. Landis, supra. `A trial court's failure to follow the guidelines or to make written a finding that the application of the guidelines would be unjust, is reversible error.' State ex rel. Waites v. Isbell, 718 So.2d 85, 86 (Ala.Civ.App. 1998)."
Robinson v. Robinson, 795 So.2d 729, 733-34
(Ala.Civ.App. 2001). The father asserts that the trial court wrongly included the expenses the mother might incur for day care when the mother is at work. The father argues that the maximum amount allowable for day care pursuant to Rule 32 for Baldwin County, where the wife resides, is $72 per week. In fact, however, the maximum amount allowable in Baldwin County is $82 per week.[4]
Rule 32(B)(8), Ala. R. Jud. Admin., provides the following regarding child-care costs:
 "(8) Child Care Costs. Child care costs, incurred on behalf of the children because of employment or job search of either parent, shall be added to the `basic child support obligation.' Child care costs shall not exceed the amount required to provide care from a licensed source for the children, based on a schedule of guidelines developed by the Department of Human Resources.
Before the Department of Human Resources implements any revision to the schedule of child care cost guidelines, it shall provide the ADC [the administrative director of courts] a copy of the revised schedule. The ADC shall, as soon as reasonably practicable thereafter, disseminate the revised schedule to all judges, all circuit, district, and juvenile court clerks and registers, and the Family Law Section of the Alabama State Bar. The clerk or register shall maintain the current schedule in his/her *Page 529 
office, shall make it available for review, and shall provide copies of it on request, at the customary cost for copies of documents."
(Emphasis added.) Rule 32(C)(2), Ala. R. Jud. Admin., provides in pertinent part, "(2) Computation of ChildSupport. A total child support obligation is determined by adding the basic child support obligation, work-relatedchild care costs, and health insurance costs." (Emphasis added.)
The child-support-obligation form, which was prepared by the mother's attorney and which was evidently adopted by the trial court, includes $433 in monthly work-related child-care costs. According to the rates established by the Department of Human Resources, the maximum amount chargeable for a preschool-aged child in Baldwin County is $82 per week, or approximately $355 per month. Thus, the father's child-support obligation deviates from the presumptively correct amount of child support to be awarded under the child-support guidelines. The trial court's judgment does not contain a finding on the record indicating that the application of the guidelines would be unjust or inappropriate, as is required by Rule 32(A), Ala. R. Jud. Admin.; therefore, we must reverse the judgment of the trial court insofar as the child-support award deviates from the child-support guidelines. See Parker v. Parker,946 So.2d 480, 489 (Ala.Civ.App. 2006) (reversing a trial court's judgment that did explain in writing why the trial court had deviated from the guidelines).
The father also argues that the trial court should not have awarded the mother any child-care expenses when, at the time of the trial, the child was not enrolled in day care. The father relies upon this court's opinion in Hoplamazianv. Hoplamazian, 740 So.2d 1100 (Ala.Civ.App. 1999), for that proposition; however, the facts in Hoplamazian
are distinguishable from the facts in this case because inHoplamazian the recipient of the child support (the mother) was not employed and did not intend to become employed.Id. at 1104. The trial court in Hoplamazian
had imputed income to the mother and had then included the hypothetical cost of child care the mother would have incurred were she employed when it determined the father's child-support obligation. Id. This court concluded inHoplamazian that the mother had not incurred child-care costs because of her employment or job search and that "[t]o impute such a cost to her, when the result wouldincrease the father's support obligation, is patently unfair." Id. at 1105 This case is different because the mother was a full-time employee at the time of the trial and because she stated that were she to have physical custody of the child she would enroll the child in a day-care facility so that the child could interact with other children.
The father also points out that the child will not be enrolled with a child-care provider full-time when she enters kindergarten. The father is correct in observing that the child-care expenses the mother would accrue would be reduced at that point; however, that contingency has not yet come to pass. The record indicates that the parties intended to enroll the child in five-year-old kindergarten but that in August 2006, when the mother was to take physical custody of the child, the child would have been approximately four and one-half years old. Although the parties did not specify the year in which the child could enroll in five-year-old kindergarten, the father testified that he thought the child would be five years old at that time. Therefore, we cannot say the trial court erred in awarding full-time child-care expenses to the mother, because at the time *Page 530 
of the judgment the child could have been too young for enrollment in public school.
The father also argues that the trial court erred in ordering the mother to pay for medical and dental insurance for the child when the mother did not specifically state that her insurance covered dental expenses. We note that the mother testified that the only difference between her policy and the father's policy was that under her policy she could take the child to the hospital where she worked instead of driving farther away. The mother's testimony also indicated that covering the child's insurance costs would be cheaper under her policy. Thus, we cannot say that the trial court exceeded the limits of its discretion in ordering the mother to provide the child's medical and dental insurance coverage.
Concerning the father's argument that the trial court's judgment requiring him to pay 50% of the child's noncovered medical expenses constituted a deviation from the Rule 32 child-support guidelines, we note that the father is required to pay 3% less than the trial court could have permissibly required him to pay, given that the father's percentage of the parties' total income was 53%. In West v. Rambo,786 So.2d 1138 (Ala.Civ.App. 2000), this court affirmed the portion of a trial court's judgment requiring a father to pay 63% of noncovered medical and dental expenses for the child when the trial court could have based that judgment upon the percentages that the parents were required to pay under Rule 32, Ala. R. Jud. Admin. Id. at 1142-43. Similarly, in this case the father's obligation to pay 50% (an amount less than the father's 53% share of the child's overall expenses) of the child's non-covered medical expenses is not plainly and palpably wrong. However, in light of this court's reversal of the trial court's judgment concerning the work-related child-care expenses, we note that the trial court, upon remand, may reexamine this issue to ensure compliance with Rule 32.
The father also argues that the payment of child support would place an undue burden upon him. According to the father's brief, his monthly expenses are approximately $2,375 while his monthly income is $1,765.80. However, the father testified at trial that his monthly income was $2,568.65. That is also the amount the father put on his child-support-income statement/affidavit that he submitted to the trial court. The father admitted that the amount on that form was his salary only and did not include overtime wages. Further, the father's testimony was that he did not "pad" his expenses "much." The trial court could have interpreted that to mean that at least some of the father's expenses had been exaggerated by the father. Additionally, the father stated that his work schedule will allow him to have, in his words, 129 days off out of the 180 days the child would be in school. Therefore, the trial court could have imputed additional income to the father on the basis that the father had significant amounts of free time during which he could elect to obtain another job. We will not reweigh the factual conclusions the trial court could have drawn from the ore tenus evidence. This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Ex parte Perkins,646 So.2d 46, 47 (Ala. 1994). Therefore, we find no merit in the father's argument that the payment of child support would place an undue burden upon him.
We affirm the trial court's exclusion of testimony from the father's counselor and the trial court's award of primary physical custody to the mother. But for one exception, we also affirm the trial court's award of child support. The exception is that we *Page 531 
reverse the trial court's calculation of the child-support award on the basis of $433 per month for work-related child-care costs without providing any written explanation for its deviation from the Rule 32 guidelines. We remand the case for the trial court either to calculate the child-support award on the basis of the amount specified by the Rule 32 guidelines for work-related child-care costs, which, in this case would be a maximum amount of $355.33 per month, or to provide a written explanation for its deviation.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
[1] No transcript of the 2004 pendente lite hearing is included in the record presented to this court.
[2] When asked whether Taylor was being called as an expert witness, the attorney for the father stated "I suppose so."
[3] The attorney who filed and argued the father's postjudgment motion was different from the father's trial attorney.
[4] Although the record does not contain a list of the applicable rates, Rule 32(B)(8), Ala. R. Jud. Admin., requires a schedule of maximum allowable child-care costs to be disseminated to "all judges, all circuit, district, and juvenile court clerks and registers, and the Family Law Section of the Alabama State Bar." On July 20, 2007, the date this opinion was released, the schedule could be accessed online at: http://www.alacourt.gov/childsupport.html. A copy of the schedule is also available in the case file of the clerk of the Alabama Court of Civil Appeals.