C.C.

v.

E.W.

2150007.

Court of Civil Appeals of Alabama.

April 22, 2016.

Stewart E. Burns of Burns Garner Law Firm, Gadsden, for appellant.

Lana Hawkins of The Hawkins Law Firm, Arab, for appellee.

THOMAS, Judge:

E.W. ("the mother") and C.C. ("the father") are the unmarried parents of a daughter ("the child") born on December 13, 2014. On May 1, 2015, the mother filed a petition in the Marshall Juvenile Court seeking a paternity adjudication, a judgment awarding the parents' joint legal custody of the child and awarding the mother "primary" physical custody of the child, and an award of child support.

The juvenile court entered a judgment on September 4, 2015, in which it awarded the parents, who lived approximately 50 miles apart, joint legal custody of the child and awarded the mother sole physical custody of the child. The juvenile court ordered the father to pay the mother $521.23 per month in child support. The father raises one issue on appeal—whether the juvenile court erred in applying Rule 32(B)(8), Ala. R. Jud. Admin., because, in determining his child-support obligation, it included monthly child-care costs in the amount of $320 that are incurred by the mother while she attends college classes.

The judgment reads, in pertinent part:

"4. In accordance with Rule 32 of the Alabama Rules of Judicial Administration and based on the income affidavits the Court finds the [father] shall pay the amount of $521.23 per month to the [mother] for the support and maintenance of the minor child (see attached CS–42).

"a. Note as to child care costs: The amount of $110/week testified to by the [mother] exceeds the allowed maximum in accordance with Rule 32(B)(8) of the [Alabama Rules of Judicial Administration,] which is currently set at $74 per week in Marshall County for a child 0–30 months old. This reduction is reflected in the CS–42.

"b. Further under the laws of the State of Alabama the voluntary full time enrollment in college, while laudable and certainly in the [mother's] and her child's long term best interest, by the [mother] requires the Court to impute minimum wage as her income instead of her actual current income of $400 per month. This is reflected in the CS–42 as well."

Rule 32 provides for the calculation of the adjusted monthly gross income of both parents after any preexisting child-support or alimony obligations are deducted. The total is compared to the schedule of basic child-support obligations appended to Rule 32 ("the schedule") to yield the basic child-support obligation. Once the basic child-support obligation has been determined, certain additional expenses, like "work-related child care-costs," may be added. Rule 32(c)(2). The revised child-support obligation is then prorated between the parents, based on their proportionate share of income.

The record on appeal contains the CS–42 child-support-guidelines form, which demonstrates that the parents had no preexisting child-support or alimony obligations, that the mother's imputed income of $1,256 per month and the father's income of $1,733 per month are added together, and that the total was compared to the schedule to determine the basic child-support obligation, which is, in this case, $579 per month. "Work-related child-care costs" are listed on the CS–42 form as $320 per month and, when added to the basic child-support obligation, yield a total child-support obligation of $899 per month. The father's prorated portion—57.98%—includes 57.98% of the child-care costs.

The father filed a timely postjudgment motion in which he raised several issues. On September 28, 2015, the juvenile court amended the judgment to provide a stan-

dard visitation schedule; the remainder of the September 4, 2015, judgment was not altered. Thereafter, the father filed a timely notice of appeal. Our standard of review is well settled:

> "When a trial court hears ore tenus evidence, its judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong. *Thrasher v. Wilburn,* 574 So.2d 839, 841 (Ala.Civ. App.1990). Further, matters of child support are within the sound discretion of the trial court and will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong. *Id.*"

*Spencer v. Spencer,* 812 So.2d 1284, 1286 (Ala.Civ.App.2001). However, the trial court's application of the law to the facts is reviewed de novo. *See Ladden v. Ladden,* 49 So.3d 702, 712 (Ala.Civ.App.2010).

The mother testified that she was a part-time employee at a restaurant and a college student seeking a degree that would take more than five years to complete. The mother testified that she worked 15 hours per week during the semester and 25 or more hours per week during school breaks. The mother said that child care was necessary during the day when she was at work or at school; L.W., the child's maternal grandmother, took care of the child if the mother worked after 4:00 p.m. The mother testified that she had arranged for the child to be cared for at a church day-care center Monday through Friday from 8:00 a.m. until 4:00 p.m. at a cost of $110 per week. The daily cost of child care at that day-care center

was $25 for a child who attended for less than an entire week.[1]

The mother testified that she attended classes Monday through Thursday from 9:30 a.m. through 3:30 p.m. and that her schedule was likely to change each semester; however, to maintain her scholarship, the mother was required to be registered for at least 15 hours of classes. The mother said that her normal work schedule included working every Wednesday night, every other Friday afternoon or night, and on "Saturdays and then usually Sunday." In other words, the mother testified that she required child care to attend classes with the exception of, perhaps, two Friday afternoons per month when she might work. S.C., the child's paternal grandmother, testified that she and her family were willing to take care of the child every Friday. The mother testified that S.C. had never made that offer before; however, the mother had no objection to accepting S.C.'s offer as long as it was S.C. who cared for the child.

On appeal, the father argues that the juvenile court erred by ordering him to pay a prorated portion of the child-care costs incurred by the mother because, he asserts, those costs are not "work-related child-care costs"; Rule 32(B)(8), which defines and addresses "child-care costs," provides, in pertinent part: "Child-care costs, incurred on behalf of the children because of *employment or job search* of either parent, shall be added to the 'basic child-support obligation.'" (Emphasis added.)

The father cites *Ray v. Ray,* 782 So.2d 797 (Ala.Civ.App.2000), in which this court concluded that the trial court had erred by allowing an unemployed father to claim $150 for occasional child-care expenses un-

---

1. The juvenile court properly determined that the amount of $110 per week exceeded the maximum of $74 per week allowable in Marshall County for a child between 0 and 30 months old based on a schedule developed by the Alabama Department of Human Resources.

der Rule 32(B)(8). The unemployed father in *Ray* is easily distinguishable from the mother in this case who is both an employee and a student. The mother points our attention to *J.L. v. A.Y.*, 844 So.2d 1221 (Ala.Civ.App.2002), but, in that opinion, this court did not address whether the trial court could require the father in that case to pay non-work-related child-care expenses because of an inadequate record. Equally lacking in guidance is *Hoplamazian v. Hoplamazian*, 740 So.2d 1100, 1104 (Ala.Civ.App.1999), in which the mother in that case, who was the recipient of the child support, was not employed and did not intend to become employed. The trial court in *Hoplamazian* had imputed income to the mother and had then included the hypothetical cost of child care the mother would have incurred were she employed when it determined the child-support obligation of the father in that case. *Id.* This court concluded in *Hoplamazian* that the mother in that case had not incurred child-care costs because of her employment or job search and that "[t]o impute such a cost to her, when the result would *increase* the father's support obligation, is patently unfair." *Id.* at 1105. Neither party cites, nor does our research reveal, a case in which we have allowed or prohibited the inclusion of child-care costs related to a parent's pursuit of an education. Whether the phrase "employment or job search," as it is used in Rule 32(B)(8), includes educational pursuits is an issue of first impression; therefore, we look to other jurisdictions for guidance.

Comparable rules and statutes in our neighboring states of Florida, Georgia, and Tennessee expressly refer to child-care expenses for education-related pursuits. Section 61.30(7), Fla. Stat., provides, in pertinent part: "Child care costs incurred due to employment, job search, *or education* calculated to result in employment or to enhance income of current employment of either parent shall be added to the basic obligation." (Emphasis added.) Likewise, express guidance is provided to trial judges in § 19–6–15(a)(24), Ga.Code Ann., which reads:

> "In an appropriate case, the court may consider the child care costs associated with a parent's job search or the training *or education* of a parent necessary to obtain a job or enhance earning potential, not to exceed a reasonable time as determined by the court, if the parent proves by a preponderance of the evidence that the job search, job training, *or education* will benefit the child being supported."

(Emphasis added.) Rule No. 1240–02–04–.04(8)(c)(1.), Tenn. Comp. R. & Regs., provides in pertinent part:

> "Childcare expenses necessary for either parent's employment, *education,* or vocational training that are determined by the tribunal to be appropriate, and that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together, shall be averaged for a monthly amount and entered on the [Child Support] Worksheet in the column of the parent initially paying the expense."

(Emphasis added.)

Section 43–19–103(j), Miss.Code Ann., includes a discretionary provision regarding adjustment to the basic child-support obligation, allowing for

> "[a]ny ... adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt."

The New Mexico Court of Appeals interpreted § 40–4–11.1(H), N.M. Stat. Ann., in *Alverson v. Harris*, 123 N.M. 153, 157, 935 P.2d 1165, 1169 (Ct.App.1996). Because the statute contained no explicit definition

of a "job search," *Alverson,* 123 N.M. at 155, 935 P.2d at 1167, the *Alverson* court concluded that the phrase "employment or job search" in the statute was ambiguous and that "an educational pursuit is a reasonable component of a 'job search.' " 123 N.M. at 157, 935 P.2d at 1169. The *Alverson* court discerned a legislative intent to include education-related child-care costs within the meaning of child-care costs incurred "due to employment or job search," as that phrase was used in § 40–4–11.1(H), as long as the parent proved a "good faith pursuit of a reasonable and attainable goal of future employment at a significantly higher wage than she reasonably can be expected to earn without such education." *Id.*

In *Stufflebean v. Stufflebean,* 941 S.W.2d 844, 847 (Mo.Ct.App.1997), the Missouri Court of Appeals upheld on public-policy grounds the inclusion of the mother's child-care expenses resulting from her attending school as a part of the child-support calculation.

> "To prohibit a custodial parent who is attending school from having her child care expenses considered for child support purposes would, in effect, discourage a custodial parent from attending college to better equip herself to obtain employment and, thus, eventually contribute to the support of the children. Where a custodial parent establishes actual and necessary child care expenses incurred as a result of working or attending school, the expenses can be considered in calculating child support. *See Gal v. Gal,* 937 S.W.2d 391, 396 (Mo. App.E.D.1997)('school related' day care costs properly included as an extraordinary expense in Form 14 calculation)."

Rule 32 does not expressly refer to child-care expenses for education-related pursuits, and it does clearly define "child-care costs." Rule 32(B)(8), in pertinent part, defines "child-care costs" as costs "incurred on behalf of the children *because of* employment or job search of either parent." (Emphasis added.) Certainly the pursuit of a college education can be *related* to employment or a job search; however, to support an interpretation in favor of the mother, we would have to conclude that education-related child-care costs are incurred "because of" employment or a job search and we would be forced to turn a blind eye to the obvious lack of inclusion in the definition of "child-care costs" of education-related child-care costs, which are included in the definitions of "child-care costs" or "childcare expenses" in the statutes of our neighboring jurisdictions.

Therefore, this court reverses the judgment of the juvenile court insofar as it improperly awarded the mother a prorated amount of work-related child-care expenses and remands the cause to the juvenile court for it to recalculate the father's child-support obligation. On remand, the juvenile court is instructed to include in its calculation only the costs of work-related child care. Nothing in this opinion is intended to imply that the juvenile court could not then deviate from the child-support guidelines upon its inclusion of a "written finding on the record indicating that the application of the guidelines would be unjust or inappropriate," Rule 32(A), based upon "facts or circumstances that the court finds contribute to the best interest of the child or children for whom child support is being determined." Rule 32(A)(1)(g).

REVERSED AND REMANDED WITH INSTRUCTIONS.

THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.